

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ABEL VASQUEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 08 C 5996 |
| v. ) | |
| ) | The Honorable William J. Hibbler |
| CSX TRANSPORTATION, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Abel Vasquez originally filed this lawsuit for defamation against his employer, CSX Transportation, Inc. ("CSXT"), in state court. In his complaint, Vasquez alleges that his employer, CSXT, published false, defamatory statements about him in his permanent service record. He claims injury to his personal and professional reputation, and demands judgment in excess of $50,000, including exemplary damages, plus the costs of the suit. Upon serving CSXT with a copy of his complaint, Vasquez made an initial settlement demand of $70,000.

On October 20, 2008, CSXT removed the case to this court. Only cases that could have originally been filed in federal court can be removed. 28 U.S.C. § 1441(a). CSXT claims two sources of this original jurisdiction in this case: (1) diversity jurisdiction, pursuant to 28 U.S.C. § 1332; and (2) federal question jurisdiction, pursuant to 28 U.S.C. § 1331. Vasquez now moves the Court to remand his case to state court, arguing that his claim does not fall under federal jurisdiction. For the reasons stated below, the Court grants his motion.

### I. Diversity jurisdiction

CSXT first argues that the Court has original jurisdiction pursuant to 28 U.S.C. § 1332, which requires complete diversity of citizenship and that the matter in controversy exceeds the

sum or value of $75,000, exclusive of interest and costs. Vasquez does not dispute diversity of citizenship in this case. Thus, the only issue is whether the matter in controversy exceeds $75,000. The Court must first determine whether CSXT has met its burden of showing by a preponderance of the evidence that the amount-in-controversy requirement is met. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006). If so, Vasquez can only defeat jurisdiction if "it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S. Ct. 586, 82 L. Ed. 845 (1938)). Here, CSXT makes three arguments in support of its contention that the amount-in-controversy requirement is met. The Court is not convinced by any of these arguments. Thus, the Court cannot exercise diversity jurisdiction over this case.

First, CSXT argues that Vasquez's demand for damages in excess of $50,000, including exemplary damages, for injury to his "reputation, good-name and standing in the community, as well as his professional reputation as a railroad engineer," support a finding that the amount in controversy exceeds $75,000. CSXT relies on little besides the fact that Vasquez seeks both compensatory and punitive damages in making this argument. CSXT cannot meet the "preponderance of the evidence" standard that the Court must apply with this sort of a conclusory argument alone.

Second, CSXT discusses Vasquez's failure to stipulate that he is not seeking, and that he will neither demand nor accept, damages in excess of $75,000. In his reply brief, Vasquez offers to make such a stipulation. If Vasquez had offered his stipulation in a timely manner, he would have easily avoided diversity jurisdiction. *Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000) (citing *In re Shell Oil Co.*, 970 F.2d 355 (7th Cir. 1992)). Vasquez has missed this opportunity, however, because jurisdiction is determined as of the instant of removal,

and he failed to make his stipulation before CSXT removed this case. *In re Shell Oil*, 970 F.2d at 356. Still, Vasquez's case does not automatically meet the amount-in-controversy requirement simply because he missed this opportunity to easily avoid the issue.

CSXT argues that Vasquez's failure to make this stipulation amounts to more than just a missed opportunity, however. Relying on *Workman*, 234 F.3d at 1000, and *Oshana*, 472 F.3d at 512, CSXT argues that because of Vasquez's failure, the Court should infer that he thinks his claim may be worth more. However, this case presents a different set of circumstances than *Workman* and *Oshana*. In *Workman*, the court decided that because he failed to contest the district court's finding that diversity jurisdiction existed following an evidentiary hearing, the plaintiff had waived his right to make such a challenge on appeal. 234 F.3d at 999-1000. The court's comments about what one could infer from a failure to stipulate were dicta, and served merely as additional support for the fact that the holding was just. *Id.* at 1000. In *Oshana*, the plaintiff had actually refused to stipulate that she was not seeking more than $75,000. 472 F.3d at 512. That is plainly not the case here, as Vasquez has volunteered to make a stipulation, even if it is untimely.

The Court recognizes that it may not be fair to allow Vasquez to take a "wait and see" approach to litigation by allowing him to seek more than $75,000 in damages until he is removed into federal court, at which point he can avoid diversity jurisdiction by stipulating to lower damages. *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 430 (7th Cir. 1997) (citing *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 367 (7th Cir. 1993)). This does not change the fact that the case only belongs in federal court if the amount in controversy exceeds $75,000, however. Unlike in *Oshana*, the facts in this case do not support a strong inference against the

3

plaintiff. Thus, the Court will not rely on the tardiness of Vasquez's stipulation to find that CSXT has met its burden.

CSXT's third argument is that Vasquez's settlement demand of $70,000 establishes by a preponderance of the evidence that the amount in controversy exceeds $75,000. The Court can take evidence about settlement negotiations into account for the purposes of determining the amount in controversy. *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006). The court in *Rising-Moore* found that plaintiff's settlement offer of $60,000 suggested that the amount in controversy was indeed over $75,000. *Id.* at 816-17. The court explained that a rational plaintiff usually accepts a settlement offer significantly lower than what they believe they could achieve if they prevailed at trial because of the risk associated with going to trial. *Id.* CSXT argues that the court's logic in that case supports a finding that diversity jurisdiction exists here.

However, CSXT fails to take into account some of the facts in *Rising-Moore* which distinguish it from the instant case. In *Rising-Moore*, a slip-and-fall case, the plaintiff's claims for lost income and out-of-pocket costs amounted to roughly $45,000. *Id.* at 815. Taking pain, suffering, and future losses into account, the district court denied plaintiff's motion to remand. *Id.* The Seventh Circuit affirmed, relying in part on the fact that the plaintiff's attorney originally estimated that if the plaintiff prevailed a jury would likely grant a verdict in the range of $180,000 to $200,000, and thus made an initial settlement demand of $160,000. *Id.* at 816. The court also addressed plaintiff's argument that it was the $60,000 settlement offer made by plaintiff at the summary judgment stage that was important. *Id.* at 816-17. The court noted that even if it were to accept that only this offer was relevant, the plaintiff's willingness to settle for $60,000 was a sign of his belief that the case was worth more at trial. *Id.*

The Court agrees with CSXT, and of course with the Seventh Circuit, that when litigants settle lawsuits, they usually take the risk of going to trial into account. Thus, plaintiffs usually settle for less than what they believe they could get if they prevailed at trial. However, plaintiffs do not necessarily shoot so low with their initial offers. In fact, the plaintiff in *Rising-Moore* provides a good example of a plaintiff making an initial offer that far exceeded his bottom line. Likewise, Vasquez may have only been attempting to anchor the negotiations in his favor by starting the process with a high number. *Rising-Moore* does not require the Court to jump to the conclusion that because Vasquez's initial settlement offer was $70,000, the amount in controversy in this case exceeds $75,000, and the Court will not do so.

CSXT has put forth a number of arguments for why the Court might infer that the amount in controversy exceeds $75,000. However, CSXT either fails to present sufficient evidence to support these inferences, or to present sufficient argument that these inferences are strong enough, without more, to justify removal. CSXT has not met its burden. Thus, the Court holds that it does not have jurisdiction over this case pursuant to 28 U.S.C. § 1332.

## II. Federal question jurisdiction

CSXT next contends that the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, which gives district courts original jurisdiction over suits arising under federal law. CSXT argues that, despite the fact that the complaint in this case alleges violations of Illinois defamation law alone, without reference to federal law, the case "arises under" federal law under the complete preemption doctrine. CSXT asserts that this doctrine applies because the terms of Vasquez's employment were governed by a collective bargaining agreement (CBA) that was in turn governed by the Railway Labor Act (RLA), 45 U.S.C. § 151, *et seq.* CSXT posits that since the allegedly defamatory statements were published in Vasquez's permanent service

record, this case is a "minor dispute" under the RLA "between an employee...and a carrier...growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153 First (i); *see Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 302-03, 109 S. Ct. 2477, 105 L. Ed. 2d 250 (1989) (explaining the difference between major and minor disputes under the RLA). Vasquez contends that the complete preemption doctrine does not apply to the RLA and that even if it did, it would not apply in this case. The Court finds that in the Seventh Circuit, the complete preemption doctrine does apply to the RLA, but that it does not apply in this case. Thus, the Court does not have federal question jurisdiction in this case.

### A. The complete preemption doctrine

Generally, federal question jurisdiction only exists if a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13, 57 S. Ct. 96, 81 L. Ed. 70 (1936). Thus, a case does not arise under federal law merely because, in order to resolve it, the court may need to interpret federal law. *Id.* at 115. These maxims of federal jurisdiction law are known as the well-pleaded complaint rule. *Franchise Tax Bd. of the State of Cal. v. Construction Laborers Vacation Trust for S. Cal*, 463 U.S. 1, 9-11, 103 S. Ct. 2841, 77 L. Ed. 420 (1983). The rule directs courts to disregard issues that are not necessarily part of a well-pleaded complaint, such as defenses, in determining whether original jurisdiction exists. *Id.* at 10. Courts must disregard these issues even if they actually appear on the face of the complaint, such as in the case of an anticipated defense. *Id.*

In following the mandates of the well-pleaded complaint rule, however, courts must also heed those of its "independent corollary," the artful pleading doctrine. *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475, 118 S. Ct. 921, 139 L. Ed. 2d 912 (1998) (quoting *Franchise*, 463 U.S. at

22). Under the artful pleading doctrine, "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Franchise*, 463 U.S. at 22. If a plaintiff "artfully pleads" his complaint in this way, a federal court must allow removal even though no federal question appears on the face of the complaint. *Rivet*, 522 U.S. at 475.

One aspect of the artful pleading doctrine is the complete preemption doctrine. *Id.* (citations omitted). The complete preemption doctrine holds that although federal preemption is ordinarily a defense, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987). The doctrine is applied only when a statute has "extraordinary pre-emptive power." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987).

### B. Complete preemption and the RLA

The Supreme Court has only recognized three statutes as completely preemptive of state law: Section 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185, *see Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 558-62, 88 S. Ct. 1235, 20 L. Ed. 2d 126 (1968); Section 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a), *see Metro. Life*, 481 U.S. at 65-66; and Sections 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85-86, *see Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7-11, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003). CSXT argues that Seventh Circuit precedent, however, requires that district courts also apply the doctrine of complete preemption in cases involving "minor disputes" under the RLA. Vasquez disagrees.

7

Vasquez does not, and indeed cannot, dispute the fact that the Seventh Circuit has found the RLA to completely preempt state complaints involving "minor disputes" before. In *Graf v. Elgin, Joliet & E. Ry. Co.*, 790 F.2d 1341, 1346 (7th Cir. 1986), the court applied the doctrine of complete preemption in a wrongful discharge case brought by an employee working pursuant to a CBA governed by the RLA. The court came to this conclusion because of the similarities between the RLA and Section 301 of the LMRA. *Id.*

Vasquez argues instead that the Supreme Court has since overruled the Seventh Circuit in *Beneficial*. In *Beneficial*, the Court not only held that Sections 85 and 86 of the National Bank Act completely preempted state law, 539 U.S. at 7-11, but made clear that it had previously only applied the doctrine with regard to two other statutes, the LMRA and ERISA. *Id.* at 8. In *Sullivan v. Amer. Airlines, Inc.*, 424 F.3d 267, 274 (2d Cir. 2005), the Second Circuit found that this statement in *Beneficial* undermined its earlier decision that the RLA preempted state law in *Shafii v. British Airways, PLC*, 83 F.3d 566, 569 (2d. Cir. 1996). Vasquez urges this court to find the same with regard to *Graf*. However, the logic upon which the Second Circuit relied in finding that *Beneficial* undermined *Shafii* does not apply to *Graf*.

The Second Circuit's decision to apply complete preemption to minor disputes under the RLA in *Shafii* was based on the Supreme Court's decision in *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 114 S. Ct. 2239, 129 L. Ed. 2d 203 (1994). 83 F.3d at 569. In *Hawaiian Airlines*, the Court analogized the RLA to the LMRA, and held that the same test used to find preemption by the LMRA would be used to find preemption under the RLA. *Id.* at 262-63. However, *Hawaiian Airlines* came to the Supreme Court from the Hawaiian Supreme Court, *id.* at 251, not from the lower federal courts, so the Court did not address *complete* preemption in that case. Instead, the Court was addressing the defense of ordinary preemption. Thus, the *Shafii* court was

mistaken when it cited *Hawaiian* for the proposition that the RLA completely preempted state law. The Supreme Court confirmed this when it clarified in *Beneficial* that it had previously only applied the complete preemption doctrine in cases involving ERISA and the LMRA. For this reason, the Second Circuit found that *Beneficial* cast doubt on *Shafii* and, upon reconsideration of the issue, held that the RLA did not completely preempt state law. *Sullivan*, 424 F.3d at 274-76.

Unlike the Second Circuit in *Shafii*, the Seventh Circuit did not base its decision in *Graf* on *Hawaiian Airlines* – in fact, the *Graf* decision preceded *Hawaiian Airlines* by eight years. *Beneficial* does not stand for the proposition that there are only three statutes which support complete preemption. The Court in *Beneficial* merely recognized that it had thus far only applied the doctrine in cases involving three statutes. 539 U.S. at 7-11. Thus, Vasquez's arguments about the persuasiveness of the Second Circuit's reasoning in *Sullivan* are irrelevant. *Beneficial* did not cast doubt on *Graf*, let alone overrule it. *Graf* is controlling precedent for this court, and it stands for the proposition that the RLA completely preempts state law in cases involving minor disputes.

### C. Complete preemption in the instant case

The Court must now decide whether the RLA completely preempts state law in the instant case. As noted above, *Hawaiian Airlines* does not hold that the RLA's preemptive force is so extraordinary as to completely preempt state law and therefore confer subject matter jurisdiction upon district courts over all cases that are preempted by the statute. Nonetheless, it does provide the test for determining whether a case is preempted by the RLA, adopting the same test applied to Section 301 of the LMRA. 512 U.S. at 263. Having established that the RLA does completely preempt state law in the Seventh Circuit, the Court must apply that test

9

here. In *Hawaiian Airlines*, the Supreme Court adopted the test laid out in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988), a case that actually reaffirmed a test used by the Supreme Court in a number of earlier cases, *see id.* at 404-06 (citing cases). Under that test, state law is preempted "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement." *Id.* However, in finding that the same test should be applied under the RLA and the LMRA, the *Hawaiian Airlines* Court also cited favorably to another case involving Section 301 of the LMRA, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985). 512 U.S. at 260. In that case, the Court held that "it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Allis-Chalmers*, 471 U.S. at 212 (quoted in *Hawaiian*, 512 U.S. at 261). "Our analysis must focus, then, on whether the...[state] tort action...as applied here confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213.

Vasquez argues that the case does not depend in any way on the meaning of the CBA governing the terms of his employment because the suit is based on rights which arise from state defamation law that is unrelated to labor law or the CBA. CSXT argues that this case will require the interpretation of the CBA, but fails to explain why this is the case, other than to state that the allegedly defamatory statements at issue were published in Vasquez's permanent service record. In order to understand how interpretation of the CBA might become necessary in this case, the Court looks to Illinois defamation law. To establish defamation under Illinois law, a plaintiff must show "that the defendant made a defamatory statement about the plaintiff, the

defendant made an unprivileged publication of that statement to a third party, and the publication caused damages." *Naleway v. Agnich*, 386 Ill. App. 3d 635, 638, 897 N.E.2d 902, 908 (Ill. App. Ct. 2008). A defendant is not liable for making privileged publications or substantially true statements, but the burden is on the defendant to establish privilege, *see Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 156 Ill. 2d 16, 619 N.E.2d 129, 134 (1993), or truth, *see, e.g., Myers v. Levy*, 348 Ill. App. 3d 906, 808 N.E.2d 1139, 1152 (Ill. App. Ct. 2004).

CSXT points to a number of cases holding that state law defamation claims are preempted by the RLA or the LMRA. In each of these cases, the court found that interpretation of the CBA would be necessary in order to resolve issues that amount to defenses under Illinois defamation law. For instance, in *Stallard v. B-Line Systems, Inc.*, 799 F. Supp. 924, 926 (S.D. Ill. 1992), a determination of the truth or falsity of the statements made by the defendant was dependent upon an analysis of a CBA governed by the LMRA because the plaintiff's claim was that his employer defamed him by stating that he broke rules defined by the CBA. In the other three cases, the statements were made as part of employer procedures defined by CBAs. *See Gore v. Trans World Airlines*, 210 F.3d 944, 950 (8th Cir. 2000) (CBA terms relevant when employer made statements during employee safety complaint procedures and Missouri law required plaintiff to show publication "with the requisite degree of fault"); *Williams v. Hitachi Zosen Clearing, Inc.*, No. 87 C 5637, 1987 WL 14095, *2 (N.D. Ill. Sept. 24, 1987) (where dissemination of employee's drug tests was at issue, CBA terms governing such dissemination during discharge process were relevant); *Fraley v. Hayes*, No. 82-5212, 1982 WL 2040, *1 (S.D. Ill. Sept. 10, 1982) ("Disciplinary investigations and statements made therein directly relate to and arise from the interpretation and application of such agreements"). Similarly, in this case, the Court will only have to interpret the CBA if CSXT asserts a defense of conditional privilege

based on its duties during disciplinary proceedings governed by the CBA. *See Powers v. Delnor Hosp.*, 148 Ill. App. 3d 844, 848 (Ill. App. Ct. 1986) (recognizing that "[d]efamatory statements may be conditionally privileged if motivated by a legitimate business interest" in case where statements were made by defendant in course of duties as plaintiff's supervisor); *see also Kuwik*, 619 N.E.2d at 134 (holding that conditional privilege exists where the "occasion created some recognized duty or interest to make the communication").

None of these cases is controlling precedent here, however, and, given that privilege is a defense under Illinois defamation law, they are not persuasive. In *Caterpillar*, the Supreme Court held that "the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule." 482 U.S. at 398. The presence of an RLA question in a defensive argument will not trump those policies either. A defendant "cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim is litigated." *Id.* at 399. As noted above, the complete preemption doctrine is a part of the artful pleading doctrine, which is a corollary to the well-pleaded complaint rule, not an exception to it. *Rivet*, 522 U.S. at 475. Thus, contrary to CSXT's assertions, and some conflicting case law, no federal questions are present on the face of the complaint filed by Vasquez. Instead, this case is based on certain rights created by Illinois common law independently of any CBA. The mere fact that a court may need to reference the CBA during the course of this litigation does not confer subject matter jurisdiction upon this court. *Caterpillar* makes clear that this is so even in cases involving statutes with such extraordinary preemptive power as the RLA has according to Seventh Circuit

precedent. The Court accordingly finds that it has no jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## *CONCLUSION*

For the above reasons, Plaintiff's motion to remand is granted.

IT IS SO ORDERED.

7/1/09
Dated

Hon. William J. Hibbler
United States District Court